**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

BOBBIE BROWN,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　Petitioner,　　　　　　　)
　　　　　　　　　　　　　　　　　　)　　Case Nos. 13 C 3984, 13 C 3985
　　　　　　　　　　　　　　　　　　)
　　　v.　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
UNITED STATES OF AMERICA,　　　　 )
　　　　　　　　　　　　　　　　　　)
　　　　　　Respondent.　　　　　　 )

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Pro se Petitioner Bobbie Brown has filed two related motions to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 for the underlying criminal case numbers 08 CR 452 and 08 CR 453. For the following reasons, the Court denies Petitioner's § 2255 motions and declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).[1]

## PROCEDURAL BACKGROUND

On June 3, 2008, a grand jury returned an indictment in case number 08 CR 452 charging Petitioner and his co-defendants with various counts of wire, bank, and mail fraud in relation to a mortgage fraud scheme in the Las Vegas, Nevada real estate market. Also on June 3, 2008, a grand jury returned an indictment in case number 08 CR 453 charging Petitioner and his co-defendants with various counts of wire, bank, and mail fraud, along with one count of aggravated identity theft, in relation to a mortgage fraud scheme in the Chicago, Illinois real estate market. The charged schemes were extensive – they involved approximately $32 million in loss and over

---

[1] On March 2, 2016, the Executive Committee for the Northern District of Illinois reassigned the present 28 U.S.C. § 2255 motions to this Court.

30 defendants. Petitioner was the leader and organizer of the criminal activity. On direct appeal, the Seventh Circuit described the fraudulent scheme as follows:

> Brown's scheme occurred in two different real estate markets, Las Vegas and Chicago, and involved recruiting many lawyers, accountants, loan officers, bank employees, realtors, home builders, and home buyers to further a plan where residential properties were purchased at inflated sales prices by insincere buyers with fraudulent loan applications. The money accumulated by Brown through his scheme generally consisted of the difference between the inflated sales price and the actual value of the property. Later, when the properties were resold at lower prices or went into default, the financial institutions that made the mortgage loans suffered combined losses of at least $32 million.

*United States v. Love,* 680 F.3d 994, 995 (7th Cir. 2012).

On January 20, 2010, Petitioner pleaded guilty to seven counts of the indictment in case number 08 CR 452 involving the Las Vegas scheme in front of Northern District of Illinois Judge Virginia Kendall without a written plea agreement with the government. On April 7, 2010, Petitioner entered into a guilty plea as to four counts of the indictment in case number 08 CR 453 in front of now-retired Judge Wayne Andersen pursuant to a written plea declaration. The government dismissed the remaining counts of the indictment in case number 08 CR 453. Because Judge Andersen retired from the bench at the end of 2010, Judge Kendall held a consolidated sentencing hearing on March 4, 2011. After the March 2011 sentencing hearing and argument, Judge Kendall sentenced Petitioner to a term of 216 months in prison in case number 08 CR 452 to run concurrently with a term of 240 months in case number 08 CR 453. Judgment was entered, and Petitioner, by counsel, filed notices of appeal on March 16, 2011.

In the consolidated appeal, Petitioner argued that: (1) the sentencing court erred in determining the loss calculation, and (2) his 240 month sentence was substantially unreasonable based on the district court's alleged personal bias. On May 24, 2012, the Seventh Circuit

affirmed. Petitioner did not file a petition for a writ of certiorari with the United States Supreme Court and, therefore, his conviction became final on August 23, 2012, allowing for the 90 days in which Petitioner could have applied for certiorari. *See Clay v. United States,* 537 U.S. 522, 525, 123 S.Ct. 522, 155 L.Ed.2d 88 (2003) ("a judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction"). Petitioner filed his § 2255 motions in May 2013, and thus the present motions are timely under 28 U.S.C. § 2255(f)(1).

## LEGAL STANDARD

"Relief under [§ 2255] is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States,* 723 F.3d 870, 878-79 (7th Cir. 2013). In other words, under § 2255, relief "is available only when the 'sentence was imposed in violation of the Constitution or laws of the United States,' the court lacked jurisdiction, the sentence was greater than the maximum authorized by law, or it is otherwise subject to collateral attack." *Torzala v. United States,* 545 F.3d 517, 521 (7th Cir. 2008) (quoting 28 U.S.C. § 2255). Accordingly, a § 2255 motion is not a substitute for a direct criminal appeal nor is it a means by which a defendant may appeal the same claims a second time. *See Bousley v. United States,* 523 U.S. 614, 621, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (relief under 2255 "will not be allowed to do service for an appeal"); *United States v. Fleming,* 676 F.3d 621, 625 (7th Cir. 2012) ("A § 2255 petition is 'not a substitute for a direct appeal.'") (citation omitted). If a Section 2255 petitioner does not raise a claim on direct appeal, that claim is barred from the court's collateral review unless the petitioner can demonstrate cause for the

3

procedural default and actual prejudice from the failure to appeal, *see Sandoval v. United States,* 574 F.3d 847, 850-51 (7th Cir. 2009), or that enforcing the procedural default would lead to a "fundamental miscarriage of justice." *Fleming,* 676 F.3d at 625. Nevertheless, because claims of ineffective assistance of counsel often involve evidence outside of the trial record, such claims may be brought for the first time in a § 2255 motion. *See Massaro v. United States,* 538 U.S. 500, 504, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003).

## ANALYSIS

I.  **Ineffective Assistance of Trial Counsel Claims**

Construing his pro se § 2255 motions and filings liberally, *see Smith v. Dart,* 803 F.3d 304, 311 (7th Cir. 2015), Petitioner argues that his trial counsel provided constitutionally ineffective assistance of counsel in the context of his guilty pleas and sentencing. To establish constitutionally ineffective assistance of trial counsel in violation of the Sixth Amendment, Petitioner must show that (1) his trial attorney's performance "fell below an objective standard of reasonableness," informed by "prevailing professional norms" and (2) "but for counsel's unprofessional errors the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "To reflect the wide range of competent legal strategies and to avoid the pitfalls of review in hindsight, [the Court's] review of an attorney's performance is highly deferential and reflects a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Groves v. United States,* 755 F.3d 588, 591 (7th Cir. 2014) (citation omitted).

To establish prejudice, it is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding," instead Petitioner must demonstrate "a reasonable

4

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Carter v. Butts,* 760 F.3d 631, 635 (7th Cir. 2014) (quoting *Strickland*, 466 U.S. at 693-94). To establish prejudice in the context of a guilty plea, Petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *see also Lafler v. Cooper,* ___ U.S. ___, 132 S.Ct. 1376, 1384, 182 L.Ed.2d 398 (2012) ("a defendant must show the outcome of the plea process would have been different with competent advice").

### A.  Guilty Pleas

Petitioner first argues that his trial counsel was constitutionally ineffective because counsel let three plea offers lapse in case number 08 CR 0452. He further maintains that one of these alleged plea offers from the government promised a prison term of eight to twelve years. At Petitioner's March 4, 2011 sentencing hearing, however, the government explained that it did not present Petitioner with a final written plea agreement in 08 CR 0452, but only communicated to defense counsel that it would recommend 10 percent off the guideline range in exchange for Petitioner's cooperation, but that Petitioner rejected this offer and the attendant draft agreement. (R. 24-4, Ex. 3, 3/4/11 Sent. Tr. at 100.) Petitioner's guideline range was 235 to 293, and thus ten percent off the guideline range was not eight to twelve years as Petitioner now contends, but, at best, approximately seventeen years. (*Id*. at 87.) In any event, Petitioner's claim that counsel let three plea agreements lapse and that one of the agreements included a sentence of eight to twelve years is factually baseless, and therefore, without merit.

5

Similarly, Petitioner also argues that counsel told him that his minimum sentence would be eight years and that his maximum sentence would be twelve years in prison, and that this advice constitutes ineffective assistance of counsel. At his change of plea hearing on January 20, 2010 in case number 08 CR 452, however, Petitioner stated on the record that counsel had answered all of his questions regarding the indictment and the maximum penalties related to the charges in the indictment. (R. 24-1, 1/20/10 Change of Plea Tr., at 9.) Also at this change of plea hearing, the government unequivocally stated on the record that Petitioner was facing a total sentence of up to 160 years in prison and a fine of $3.25 million. (*Id*. at 8.) Thereafter, Petitioner stated he understood the penalties and that he was very satisfied with his counsel's representation. (*Id*. at 9-10.) Furthermore, when the Court specifically asked Petitioner whether he understood the preliminary calculations regarding his sentencing guidelines range, Petitioner answered "yes." (*Id*. at 14.) Petitioner also stated at his change of plea hearing in case number 08 CR 452 that no one forced him to plead guilty. (*Id*. at 27.)

Moreover, on April 7, 2010, Petitioner entered a guilty plea in case number 08 CR 453 pursuant to a written plea declaration. At the change of plea hearing, the Court advised Petitioner of the maximum penalties he could face upon entry of his guilty plea. (R. 24-2, Change of Plea Tr., at 14.) In particular, the Court explained the penalties as follows:

> There is a maximum sentence of 60 years in prison. The offense also carries a maximum fine of $750,000.00 or twice the gross gain or gross loss resulting from the offense, whichever is greater. You further understand that the Judge may impose a term of supervised release of no less than three and no more than five years. You further understand that the Court must order restitution to the victims of the offense in an amount determined by the Court.

(*Id*.) When the Court asked Petitioner if he was aware of the potential penalties, Petitioner answered "yes." (*Id*.) Also at this April 2010 change of plea hearing, the Court discussed the

6

sentencing guidelines and told Petitioner that his cooperation, if any, would be evaluated by the government. (*Id* at 19.) Thereafter, Petitioner acknowledged that he had not reached an agreement with the government. (*Id*. at 21.) In addition, both Petitioner and his counsel denied that any threats, representations, or promises had been made – nor agreements reached – to cause Petitioner to plead guilty. (*Id*. at 25.) Further, Petitioner's plea declaration acknowledged that the government had not placed any value on his cooperation at the time of the change of plea hearing. (R. 24-3, Plea Decl. at 17.)

Under these facts and assuming that counsel provided erroneous advice in relation to the guilty pleas, Petitioner cannot establish the *Strickland* prejudice prong because it is well-established that a district court's explanation of the sentencing process to a defendant during the defendant's plea colloquy removes any possible prejudice from counsel's advise on sentencing consequences. *See Thompson v. United States,* 732 F.3d 826, 830–31 (7th Cir. 2013) (per curiam) (citing *Wyatt v. United States,* 574 F.3d 455, 458–59 (7th Cir. 2009); *Bethel v. United States*, 458 F.3d 711, 718-20 (7th Cir. 2006)). Put differently, because the Court's thorough and detailed explanations at Petitioner's change of plea hearings removed the possibility of any prejudice from counsel's allegedly erroneous sentencing advise, Petitioner cannot establish the *Strickland* prejudice prong. As such, these ineffective assistance of counsel claims fail. *See Groves*, 755 F.3d at 591 (if petitioner "is unable to make a sufficient showing of one of the *Strickland* prongs, we need not consider the other.").

### B. Sentencing Issues

Petitioner also argues that his trial counsel provided ineffective assistance of counsel at sentencing in relation to the loss, restitution, and forfeiture determinations that the Court found

7

attributable to him.

First, Petitioner challenges the Court's loss calculation and his trial counsel's objections to the loss calculations. As to counsel's performance in relation to the loss calculation, the record shows that trial counsel filed a motion to appoint a forensic accountant – who would investigate the loss amount – that the Court granted. Counsel also filed several briefs objecting to the Presentence Investigation Report ("PSR") regarding the loss calculation. Additionally, at Petitioner's March 4, 2011 sentencing, the Court conducted an evidentiary hearing about the loss amount at which time trial counsel repeatedly challenged the government's position. (3/4/11 Sent. Tr. at 7-26.) Further, trial counsel thoroughly cross-examined the government's FBI agent as to the evidentiary basis of the loss amounts that the agent had calculated. (*Id.* at 26-34.) Based on this record, the Court would be hard-pressed to conclude that Petitioner has overcome the strong presumption that counsel's performance was within the wide range of reasonable professional assistance as dictated by *Strickland*. *See Vinyard,* 804 F.3d at 1225; *Groves,* 755 F.3d at 591. In fact, during his allocution at sentencing, Petitioner testified that counsel "did an excellent job defending me." (3/4/11 Sent. Tr. at 101.) Furthermore, Petitioner's appellate counsel challenged the Court's loss calculation in the consolidated appeal and the Seventh Circuit upheld the Court's findings concluding that the loss amount was based on reliable evidence and an acceptable calculation method. *See Love,* 680 F.3d at 999. Indeed, the district court thoroughly addressed and calculated the loss. As such, the Court denies Petitioner's § 2255 motion as to this claim of ineffective assistance of trial counsel.

In addition, Petitioner maintains that trial counsel did not investigate and contest the number of victims that led to an enhancement of his sentencing guideline range. As discussed

8

directly above, trial counsel investigated and contested the loss amount repeatedly before and during sentencing. To clarify, at sentencing, the FBI agent discussed two charts that he had prepared, which summarized the fraudulent loan transactions attributable to Petitioner's Chicago and Las Vegas schemes. These charts identified 102 fraudulent transactions in relation to the Chicago scheme and 32 transactions associated with the Las Vegas scheme. Again, trial counsel thoroughly cross-examined the FBI agent and challenged the basis of his conclusions. Also, it is undisputed that prior to sentencing, trial counsel hired a forensic accountant to investigate the loss amount. Therefore, Petitioner's argument that trial counsel did not investigate and/or contest the loss amount does not have factual basis.

Likewise, Petitioner takes issue with counsel's efforts in contesting the forfeiture amount. Although the Court entered a preliminary order of forfeiture in the 08 CR 0452 case, the Court did not enter a final order of forfeiture in that matter. Nevertheless, the Court entered a final order of forfeiture in case number 08 CR 0453. In that final order, the Court indicated that $5,641.00 from a client escrow account was available to partially satisfy the forfeiture judgment. (R. 719, 7/14/11 Order, at 2.) Construing his § 2255 arguments liberally, Petitioner argues that counsel's failure to contest the forfeiture amount constituted ineffective assistance of counsel because the restitution amount should have been offset by the amount of the forfeiture to avoid double recovery. It is well-settled, however, that forfeiture and restitution serve different purposes, namely, "forfeiture seeks to punish a defendant for his ill-gotten gains by transferring those gains [] to the United States Department of Justice," whereas, "restitution seeks to make the victim whole." *United States v. Venturella*, 585 F.3d 1013, 1019 (7th Cir. 2009) (citation omitted) (collecting cases). Here, the restitution amount goes to the financial institutions that

9

Petitioner defrauded and the forfeiture amounts will be transferred to the DOJ. Accordingly, the same parties are not benefitting from both restitution and forfeiture. *See id.* Therefore, Petitioner's argument that the restitution amount should have been offset by the amount of the forfeiture is without merit, and thus counsel's failure to contest the forfeiture amount is not ineffective assistance of counsel. *See Warren v. Baenen,* 712 F.3d 1090, 1104 (7th Cir. 2013) ("Counsel is not ineffective for failing to raise meritless claims.").

Last, construing his pro pleadings liberally, Petitioner asserts that he was sentenced under the 2009 version of the United States Sentencing Guidelines instead of the 2005 version, which was the year in which he committed the offenses, and that this error violated the Ex Post Facto Clause of the United States Constitution. *See Peugh v. United States,* ––– U.S. –––, 133 S.Ct. 2072, 186 L.Ed.2d 84 (2013). As the Seventh Circuit explains, the Supreme Court's decision in *Peugh* "forbids subjecting a criminal defendant to an increase in his guidelines sentencing range made by the Sentencing Commission after the defendant had committed the crime for which he is being sentenced." *Conrad v. United States,* 815 F.3d 324, 325 (7th Cir. 2016). The Seventh Circuit, however, has declined to apply *Peugh* retroactively on collateral review. *See id.* at 328; *see also Hawkins v. United States,* 724 F.3d 915, 917 (7th Cir. 2013). What this means for Petitioner is that although the applicable guidelines had changed after he committed the offenses, because he is bringing this argument on collateral review in a § 2255 motion, the Court cannot apply *Peugh's* holding to his sentence retroactively. As such, Petitioner's claims based on the alleged sentencing failures are without merit.

## II. Ineffective Assistance of Appellate Counsel Claims

Pro se Petitioner also maintains that his appellate counsel provided ineffective assistance of counsel. As with ineffective assistance of trial counsel claims, courts apply the two-prong test set forth in *Strickland* to evaluate the effectiveness of appellate counsel. *See Makiel v. Butler,* 782 F.3d 882, 897 (7th Cir. 2015). Under the *Strickland* performance prong, an appellate counsel's performance is constitutionally deficient if counsel fails to appeal an issue that is obviously and clearly stronger than the claims counsel did raise on appeal. *See id.* at 898; *Blake v. United States*, 723 F.3d 870, 888 (7th Cir. 2013). In this context, appellate counsel need not raise every non-frivolous claim, but should select among claims to maximize the likelihood of success on appeal. *See Smith v. Robbins,* 528 U.S. 259, 288, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000); *Makiel,* 782 F.3d at 897. To establish the *Strickland* prejudice prong, Petitioner must show that there is a reasonable probability that the issues appellate counsel did not raise would have changed the outcome of the appeal. *See Johnson v. Thurmer,* 624 F.3d 786, 793 (7th Cir. 2010).

Petitioner first argues that appellate counsel's performance was constitutionally ineffective because he failed to raise the issue of trial counsel's ineffectiveness on direct appeal. As discussed above, Petitioner has failed to establish that trial counsel was ineffective in the first instance. *See Ashburn v. Korte,* 761 F.3d 741, 751 (7th Cir. 2014) ("Without a meritorious [ ] claim," a petitioner "cannot possible demonstrate that he was prejudiced by his appellate counsel's failure to argue such a claim."). Moreover, because claims of ineffective assistance of counsel often involve evidence outside of the trial record, such claims should be brought in a § 2255 motion as Petitioner has done. *See Vinyard v. United States,* 804 F.3d 1218, 1227 (7th Cir.

11

2015). As the Seventh Circuit teaches, "it is imprudent to present an ineffective-assistance argument on direct appeal." *United States v. Flores,* 739 F.3d 337, 341 (7th Cir. 2014). In fact, had appellate counsel brought these claims on direct appeal, Petitioner would have been barred from bringing his ineffective assistance of trial counsel claims on collateral review. *See Vinyard,* 804 F.3d at 1227. Therefore, Petitioner's argument is without merit.

Next, Petitioner asserts that his appellate counsel did not research his case and discover that the Amended Judgment and Commitment Order did not contain 10 victims and that there was a discrepancy in the loss and restitution amounts. Petitioner further argues that counsel's failure to argue this discrepancy on appeal was constitutionally ineffective. As explained, at sentencing, the Court found well over ten financial institution victims from the Chicago and Las Vegas schemes. Moreover, at his change of plea hearings, Petitioner acknowledged on the record that there would be a two-level sentencing increase under U.S.S.G. § 2B1.1(b)(14)(A) because there were more than ten victims. Likewise, Petitioner's Amended Judgment and Commitment in 08 CR 452 – which was part of the appellate record – contains at least 38 financial institution victims. (R. 08 CR 452, R. 576.) In short, appellate counsel's failure to raise this claim on appeal does not amount to ineffective assistance because it is well-established that "[c]ounsel is not ineffective for failing to raise meritless claims." *Warren,* 712 F.3d at 1104.

Similarly, construing his pro se filings liberally, Petitioner argues that appellate counsel was constitutionally ineffective because he failed to make appellate arguments about the erroneous restitution amounts. Petitioner, however, does not identify the specific errors in the Amended Judgment in which the Court carefully detailed the total loss and restitution ordered. (R. 08 CR 452, R. 576.) Without more, Petitioner has failed in his burden of establishing that

12

this claim is clearly stronger than the claims his counsel raised on appeal. *See Makiel,* 745 F.3d at 898; *see also Jones v. Barnes,* 463 U.S. 745, 751-52, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) ("[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."). Furthermore, as previously discussed, because Petitioner's ineffective assistance of counsel claim based on the forfeiture amounts lacks merit, appellate counsel was not constitutionally ineffective for failing to bring this claim on appeal. *See Johnson,* 624 F.3d at 793 (because "appellate counsel claim is predicated on trial counsel's errors, the two claims rise and fall together.").

Next, in his supplemental motion filed on March 10, 2014, Petitioner argues that his appellate counsel violated his constitutional rights because counsel only filed Petitioner's direct appeal and that Petitioner had to bring his § 2255 motion pro se. Because the Sixth Amendment right to counsel does not extend to collateral review, including § 2255 motions, Petitioner's argument that counsel violated his constitutional rights by not representing him in the present collateral attack lacks merit. *See Resendez v. Smith,* 692 F.3d 623, 626 (7th Cir. 2012); *Ballinger v. United States,* 379 F.3d 427, 430 (7th Cir. 2004).

On a final note, because the motion, files, and records of this case conclusively show that Petitioner is not entitled to any relief under § 2255, the Court need not hold an evidentiary hearing under the circumstances. *See Koons v. United States,* 639 F.3d 348, 354-55 (7th Cir. 2011); 28 U.S.C. § 2255(b).

**III.     Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(2), a petitioner does not have the absolute right to appeal a district court's denial of his § 2255 motion, instead, he must first request a certificate of appealability. *See Miller-El v. Cockrell,* 537 U.S. 322, 335, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). A petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *See id.* at 336; *Flores-Ramirez v. Foster,* 811 F.3d 861, 865 (7th Cir. 2016). Under this standard, Petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El,* 537 U.S. at 336 (quoting *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)).

As discussed, Petitioner's ineffective assistance of trial and appellate counsel claims are either factual basis or without merit, and Petitioner has not demonstrated that reasonable jurists would disagree as to the Court's conclusions regarding these claims. Accordingly, the Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

**CONCLUSION**

The Court denies Petitioner's motions to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 and declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

**Dated:**  June 9, 2016                                **ENTERED**

_____
**AMY J. ST. EVE**
**United States District Court Judge**

14